the Court of Appeals, we have two cases to be submitted today on oral argument, and we begin with Soaring Wind Energy, L.L.C. v. Catic USA, Incorporated. Mr. Salgado. Good morning. It may please the Court. Richard Salgado, representing AVIC-USA today. I also wanted to mention at the front of this that we are dividing argument. I'm going to be talking about issues that pertain most directly to the district court, not reaching the question of arbitrability. And Mr. Chow, who is at the Council table with me, will address some of the issues. So we're about trying to evenly divide it the best we can, subject to questions. To start out here, I wanted to explain that really on these issues what we're seeking is a fairly narrow remand, which is really for the district court judge, Judge Kincaid, to reach and decide really the one issue, the one question that only he can decide, the one question for which there's no deference given to the arbitration panel, and that is whether or not the non-signatories on this agreement, there were signatories, AVIC-USA being one, and there were various non-signatories, whether those non-signatories are subject to the arbitration. And I believe that it is well-established, both by case law but also by agreement of the parties. I don't think it's disputed that only, and Judge Kincaid himself already decided previously, that only the district court can decide whether those other parties are indeed parties to the arbitration agreement. But what's, there are no facts to be decided, aren't there? Pardon? Are there any facts to be decided? Yes, Your Honor, there are. There actually was, there was never a complete record made on that issue, because the issue was only ever addressed directly with the arbitration panel, in which the non-signatories themselves never participated. And so they simply weren't participants in building that record. And so there is an incomplete record still, and— Well, they held that the parent Chinese company operated with all the subs as a single entity. They, they did find that. The arbitration panel found that, Your Honor, but they found that based only on a record developed with the participation of Soaring Wind and of AVIC-USA, and without any participation, really, any substantive participation, by the non-signatories. And so that's really, fundamentally, the non-signatories found themselves in the position of not being able to participate in the arbitration, because if they did so, they've acquiesced to being part of the arbitration. But at the same time, the arbitration panel didn't actually have the authority to decide. That's something the judge had to decide. And what happened here— The theory for why non-signatories might be parties to the agreement is the alter ego argument. That is correct. So you're saying remand for the judge to decide if the non-signatories are also parties to the agreement, which requires this issue of alter ego to be decided. That is correct, Your Honor. That is correct. But why aren't all the facts decided by the panel here that would decide that issue? Well, again, first of all, this is the one issue on which no deference is given to the panel. But as far as the fact-finding that went on, that fact-finding was not done by the judge. It was not subject to any of the normal strictures and requirements you would have in a federal court. It was done by the arbitration panel. And again, the non-signatories simply could not participate, because if they had participated, they'd be conceding that they're subject to the arbitration. And so they had to sit out. So it's a very one-sided record is what you have right now. Yeah, but if you've got one of the Chinese companies controlling everything, why didn't they participate in that fashion? Because their position is that they're not a participant. They're not a—they're not party to the agreement. Their position throughout this whole process has been that that Chinese company is not a signatory to the agreement, and they are not subject to the arbitration. And so for them, they couldn't join in, because even if they wanted to say things and come up and speak and say, here's our part, they were in a position in which if they did so, they've now conceded that they are party to the arbitration. It's a very—it's a Hobson's choice, catch-22, whatever you want to call it, that they essentially were forced to be on the sideline during this. And so at this point, the fundamental problem is the district court judge has never decided this issue. And what he did instead here was he severed before he issued the order confirming the award against AVIC-USA, he severed out the In theory, that sounds fine, until you look deeper at it and you realize that that actually creates various problems—I'm looking at my time and realizing that it did adjust, okay, sorry—it creates various problems, both in the jurisdiction front, which we briefed for this court at the court's direction, and it also creates problems on the merits, simply because on the merits, what happened here was the determination of liability against AVIC-USA was predicated entirely not on the fact that AVIC-USA itself ever did anything. It was actually found by the arbitration panel that AVIC-USA did not itself take any action that would have been a breach of the agreement. Instead, what they found was that these non-signatories took actions that the arbitration panel believed to be in violation of the agreement, and then because they were affiliates of AVIC-USA, that was the source of liability of AVIC-USA. Well, why doesn't that work? I mean, that's what the contract says. Well, it doesn't—thank you, Your Honor. That doesn't work simply because the foundation of that determination that the actions of the non-signatories were violations is based on, in the first instance, the determination that the non-signatories were indeed subject to the arbitration award. Because they were subject to the arbitration award, that enabled the arbitration panel to draw an adverse inference from their non-participation in the case based on that adverse inference, even though—one interesting part of this, and I'll read here. This is actually from the Record on Appeal, page 269, which is the arbitration award at paragraph 128. The panel explains that normally Soaring Wind would be able to discover the respondents breached the agreement by entering into X agreement or financing Y wind project or making Z equity investment. What paragraph is that? I don't have the— Sorry, that is paragraph 128 of the award on page 269 of the Record on Appeal. And essentially what the arbitration panel is saying right there is they didn't have this evidence. They didn't have the evidence they needed to prove their case. But then they said, well, the fault of that is because they couldn't get that evidence because the non-signatories didn't participate. So we're going to draw an adverse inference against those non-signatories that the evidence would be there had they participated. But the problem is you can only draw that adverse inference if they're parties to the agreement, which takes— Aren't they alter egos, parties to the agreement? Well, that becomes a part and parcel issue, Your Honor, because that's fundamentally bound up in why they would be parties to the agreement. The agreement—and this is actually—the rule of it is section 13.3 of the Soaring Wind Agreement, Record on Appeal, page 349, is the source of the adverse inference authority. And it says that that adverse inference can only be applied to a disputing member. So fundamentally, the adverse—essentially we built a house here based on an adverse inference that led to a finding of actions committed by the non-signatories that were then imputed back to AVIC-USA. But that house was built on the threshold foundational determination that they were subject to the arbitration agreement and, therefore, could have an adverse inference drawn against them. Your initial time has expired. I've seen that, Your Honor. Thank you, Mr. Delgado. Mr. Chau? Good morning. Senator Chau, on behalf of the four respondents who did not sign the contract or the arbitration agreement—we call them the non-signatory respondents—I'd like to focus on the due process, Article V— We need to start the clock. Okay. Thank you. All right. Excuse me. Go ahead. I'd like to focus first on the Article V defenses under the New York Convention. Time permitting, I may come back to the arbitrability issue. And I preface my remarks by saying I am not a critic of arbitration. My career is built in large part on arbitration. As an advocate, practice group leader, and now increasingly arbitrator. And I am well aware that there is great deference paid to decisions of arbitrators. This is not a run-of-the-mill arbitration. This is not a run-of-the-mill appeal. The district court's judgment affirming the award jeopardizes the institution of arbitration and would jeopardize—make us, the United States, the world of international arbitration. Why do I say that? This would be the first case in United States jurisprudence where one side is allowed to have more arbitrators than the other side over objections. That's what the contract said. And arbitration is a matter of contract. That's the— There are two responses to that. That's the bedrock principle. The parties decide. Two responses to that, Your Honor. The non-signatories did not sign that contract. And there's authority in the Supreme Court, as well as in this Court, that says that the gateway decision, threshold decision, about whether a party who did not sign the contract, the arbitration agreement, is subject to arbitration, that decision is—cannot be delegated to the arbitrator. And, in fact, Judge Kincaid said as much in the ascendant decision, quoting and citing good authority from the circuit. So that does not apply to the four parties I'm representing here. If a lopsided tribunal under these circumstances, which I'll go into a minute, is affirmed, it will decrease—undermine confidence in the institution of arbitration. So then what you're saying is the FAA does not contemplate a situation—or the New York Act or any of the arbitration acts do not contemplate a situation in which the parties have decided for unequal representation. Is that right? That can never happen, right? If I understand the question, Your Honor, if a non-signatory has not signed the contract, then there must be a preliminary decision by a court before it can go to the arbitrators. I'm talking about what I call the unequal representation issue. Yes. And you're saying that the U.S. courts are never going to recognize an arbitration award where the representation is unequal, at least to the extent— There is no case applying Article V defenses under the New York Convention, whether it's been an uneven tribunal, none. We looked for authority. Our associates look for authority in the United States. And so what do you say? What is there out there about uneven tribunals? We found a lot of authority that said a bedrock principle of due process in a fair tribunal is equal treatment. Equal treatment means equal appointments, equal input into the constitution of it, and by extension, equal number of appointments. There's an easy way to get around that, which is just to go to federal court instead of going to arbitration. If parties don't want that unequal representation, then just stay out of arbitration. But it was soaring wind. Tang Energy is the claimant. They're the plaintiff. They chose the forum, which is arbitration. They chose to allege that non-parties were brought in to this inappropriately, and this entire sort of procedural conundrum was created by them. Why isn't the contract enforceable? Why is the contract not enforceable? It provides for the way these arbitrators were appointed. The contract cannot apply to the non-signatories who never signed the contract. The contract is, you know, arbitration is only by consent and is very good authority. Supreme Court, this Court, it says the arbitrators cannot make a determination of jurisdiction over the non-signatories until a court does, a U.S. court does that, a court does that, and that's never happened. The District Court below acknowledged that in the Ascendant decision, but it never did do that, never did do that. I'd like to, I think there's no dispute between the parties that public policy and due process are defenses under the New York Convention, and there's no dispute that due process extends to arbitration proceedings. We cited, and I'm not going to go into it, a lot of case authority for the proposition due process and fairness applies to arbitrations. We could not find authority under Article V due process with a lopsided tribunal, and I submit that's because no one has ever been brazen enough, and so ignoring the traditions of fairness and due process to ever try that. This is the first case. The, and I'd like to turn away from U.S. case law and to the International Arbitration Authority, who sum up the international arbitration traditions and law. Perhaps the most famous treatise writer in international arbitration is Gary Bourne, a multivalued treatise, and I quote, Article 5.1b, which is due process, permits non-recognition where an award is based on procedures that deny the parties equality of treatment. It goes on. Similarly, procedural public policy under Article 5.2b, that's the public policy, includes equality of treatment and an impartial tribunal. In the record is the declaration of Mr. Townsend, the head of the Hughes-Hubbard-Reed arbitration practice, former chairman of the AAA. He quotes, few concepts are as universally accepted in international arbitration as that each side of the dispute should have an equal say in selecting the arbitration tribunal. And then we also quoted from Charles Nairach, who actually went as far as to say, that if the parties agreed method creates a significant imbalance between the parties in the constitution of the panel, that method can be set aside by national court. Your initial time has expired, Mr. Chau. Thank you.  Mr. LeClaire. Good morning. May it please the court. Lou LeClaire on behalf of Soaring Wind and the Movens. I think it's important to make sure that we are clear about what is up on appeal right now, which is the judgment against AVIC-USA. It's not the judgment against the non-signatories, the alter egos. It is only the judgment against AVIC-USA. That's what's on appeal here now. And that's very important because AVIC-USA was the signatory unquestionably to this proceeding, and therefore the question is, can it be enforced under the standard principles of arbitration? And I think it's crystal clear that it can be enforced because there is not any basis that they have shown to vacate that specific award. I want to spend just a second on jurisdiction, even though the other side did not argue it, because I think it is important, and I want to just focus on the question of jurisdiction under the New York Convention. And I think what has gotten a little confused is the blurring of jurisdiction in the merits. If we, in fact, alleged, based on the arbitration award, alter ego, and we allege the involvement, that creates federal jurisdiction under the New York Convention. And the Fifth Circuit in the Stem case and the Second Circuit in the Oracle case make clear that where the question they're asking, they're basically saying go back and decide the alter ego issue. But you don't do that to find jurisdiction. I thought the basis for jurisdiction was diversity. That was the basis that was pled, but as the Court undoubtedly is aware, any basis of jurisdiction is appropriate for this Court to determine. You don't just rely on, I think diversity applies, but that's a more complicated question. I think it's crystal clear that we have jurisdiction under the New York Convention. Well, you need to discuss diversity jurisdiction. Okay. Diversity jurisdiction, the issue is whether when an arbitrator orders a divestiture, that has any meaning. And our position is— Whether it has any legal effect. Has any legal effect. And the Supreme Court itself has said that the very purpose of arbitration is to, in fact, for the parties to act voluntarily and to comply. And the cases that they are talking about with respect to diversity jurisdiction are cases where you're seeking an enforcement. There's no question that you can't execute. If you can't execute, how could you divest somebody of a large asset? Well, if we take our own action, which in fact happened here, if the arbitrator has ordered divestiture and the divestiture can be undertaken without any need for third-party action, that's a different situation than saying that you can go to court and seek execution upon it. I think that's a different question. So I think— Given the effect of the award, you know, taking away a sizable asset is a substantial consequence. It is a substantial consequence, but it also is what was—the question in my mind is whether an arbitration award has any meaning. There's no question they can review it and they can seek to overturn it. But the question is, does it have meaning? And of course— No, meaning is not to test. Does it have legal effect such that it affects the domicile of the parties or the relationship of the parties in terms of potential diversity jurisdiction in district court? Well, there's no question that it has some legal effect, and the question is, is it sufficient legal effect? And whether or not— Does it alter the legal relationship between the parties merely the fact that there has been an award to which, number one, the parties have not agreed, and number two, has not been confirmed in federal district court? I understand, Your Honor. That is the question. I think there's cases that suggest that it doesn't have sufficient legal effect. Our position is that it does in this case because it does not require any action by a court in order for that to be effected. And the cases that talk about legal effect, all the cases are talking about where you have to go to court to get some action taken. So that's our position. I'd like to address the other issues if I could, Your Honor. And I do think— That's fine if you want to do that, and you've got 14 minutes left, but you're in real danger here of having a dismissal for one of jurisdiction in the district court. So if you want to try to avoid that question, that's fine. That's up to you. Your Honor, the other side hasn't even argued for dismissal. Even the other side— It's jurisdictional. They don't have to argue for it. But even the other side acknowledges the law, Your Honor, that with respect to that the court can look at bases of jurisdiction, including the New York Convention. So we are entitled— Well, then argue the New York Convention because it has to have a reasonable relationship with a foreign state. Well, there's actually— I don't see that. There's actually two different bases for jurisdiction under the New York Convention. First, whether a party is a non-U.S. citizen. And here, because of the claim of alter ego, we do in fact have an agreement. What we have here, I think it's important to actually start with the New York Convention itself because it says an arbitration agreement or arbitral award arising out of a legal relationship, which is commercial. There is no question that we have an arbitral award against an organ of the Chinese government. So we have an arbitration award, which falls squarely under the New York Convention. For jurisdictional purposes, does the court have to make the alter ego determination, or do you want us to rely on the arbitrator's determination? Because I think you're suggesting remand in your briefs on the—if we say no diversity, aren't you suggesting remand on whether it falls under the convention? We don't believe that any remand is necessary because all that's required under the cases is a non-frivolous basis. In other words, if we have— The removal provision, isn't that a separate—related to in the removal provision? No, I think the exact same test applies under the actual New York Convention. In other words, if we have alleged and we have—not only alleged, we have an arbitration award that finds all of these things, and we have therefore brought jurisdiction on the basis of that, the question of whether the merits of the alter ego finding, that doesn't—even if the court ruled against us, wouldn't deprive us of jurisdiction. Even if the court ruled against us on alter ego, it would not deprive us of jurisdiction. Because you have an award against you. Is that your point? I'm sorry? Because you have an award against the Chinese. Because we have an award, we have a non-frivolous basis for asserting federal jurisdiction, and what the courts say is their claim is really on the merits, and therefore you must assume jurisdiction and address the merits. That's what I think is the rule under the Stem v. Gomez case, and specifically under the Oracle case in the Second Circuit, exactly the same situation. Oracle was the parent. They brought a claim in federal court to enforce the award against Oracle, the parent, and the court found it was wrongly determined that Oracle had been—was subject to arbitration, but they did not dismiss for lack of jurisdiction, because they said the question was a merits question. You must assume jurisdiction and then rule on the merits. You don't dismiss on the basis of jurisdiction. Even though they said they were wrong in what they said, they did not dismiss on the basis of jurisdiction. All right. Let me turn to—Mr. Salgado's argument was that the whole foundation of this award is the finding of alter ego, and that's not correct. The findings in this case, the arbitration award found liability against ABIC-USA based on the fact that Section 612 of the agreement, ABIC-USA agreed that its affiliates would not compete. So because it's a direct liability, it was not founded on alter ego. That's why this award is conformable without regard to any alter ego finding. That's the very reason that the court separated off ABIC-USA, and that's the issue that's on appeal here right now, because there is no reason why this cannot be confirmed. You don't have to find alter ego to confirm this award against ABIC-USA. Again, the arbitration panel found, and their finding is binding on this court, that they built two wind farms based on evidence, the Sears Wind Farm and the Rawls Wind Farm, in violation of 612 of the agreement. That has nothing to do with alter ego. That was not based on alter ego. That was a specific finding of liability by ABIC-USA. So, therefore— Can adverse inference factor into that? The only effect—the adverse inference is getting—has gotten way too much focus, in my opinion, because the court—the arbitration panel specifically found a violation of the agreement and damages. It was only after that, and what they said was very limited. They said, because you didn't follow a discovery order, we're going to infer, without additional evidence, this $50 million investment. That was a—merely an evidentiary ruling, which is not subject to review, and so it is a very limited inference, and it was an inference in the award after they had already found liability and damages. So, it seems to me that the question is whether or not, under the very limited test for which an arbitration award has to be vacated, they have not met that test because they are talking about a limited evidentiary ruling, and that is not the foundation. The foundation of this arbitration award was a significant amount of evidence about the competition under 612. That was a significant amount of evidence that found that they had violated the agreement, and the court actually considered very carefully the question of—they found it was ambiguous. They found the agreement—one part of the agreement, 610, only binds the members, but 611 and 612 actually bind affiliates of members, and we cited cases to the effect that where you have—where someone could bind their affiliates by agreement. In other words, if AVIC-USA says, I agree that my affiliates will not compete with you under—in the business, the defined business of wind farms, that's a perfectly valid—under the Extria case and some other cases, that's a perfectly valid agreement to make under the contract. And so, for that reason, it was direct liability. It wasn't alter ego liability. It was direct liability for the violation by the affiliates under the agreement. And that's the reason why this award comes up separate from the alter egos and is affirmable because it is a direct violation and damage is found, which all that's required for damage is that it come from the essence of the contract. All right. Let me turn—I have six minutes left. Let me turn to the public policy argument made by Mr. Chau. I'll save some time to talk about damages, too. Okay. Well, let me talk about damages, then. I'll just go ahead and address that right now. My problem is why the divestment is not a punitive damage. And I think, Your Honor, I think this is a question of the standard of review more than anything else. The arbitration panel, as the district court found, did not, in fact, award punitive damages. They didn't call it punitive damages. They didn't say it was punitive damages. Yeah, but we—I mean, the definition of compensatory damages, we know what that is. And it doesn't seem to me this divestment falls in that—within that definition. Well, I understand exactly what Your Honor is saying with respect to that. And the question is what was sought here was damages of $1.8 billion. And the arbitration panel was trying to come up with a remedy. And, in fact, they determined that the appropriate claimant was Soaring Wind. And when they measured the damages, they measured the damages lost to Soaring Wind, the entity. So there's no question those damages were compensatory damages when measured by the loss of Soaring Wind, the entity that involved all the parties. Now— The expectation loss seemed to me to be the lost profit. Yes. And I do completely understand Your Honor's point is they measured the damages, and then they did the divestment, which doubled the damages. And I understand that. But the question is, under the case law, all that this Court should look at is whether these damages draw their essence, are rationally inferrable from the contract. That's what the executone case from this Court says, is whether they are rationally inferrable from the contract. And there's extraordinary deference, even more than any other deference. There's extraordinary deference on the remedies selected by the arbitration panel. So for that reason, this Court should not be looking to set aside a damage award, which is in any way rationally inferrable from the contract, which is exactly why Judge Kincaid in the district court said you haven't shown a basis. And the fact that this Court might measure damages differently doesn't change— doesn't make it punitive damages. All right. Let me turn to public policy. And again, I think it's important to remember who's actually here. The alter egos are here. They claim standing, not because the award is against them. It's not against them. That award has not been confirmed by the district court against the alter egos. The only reason they are here is because they, as we acknowledge, the issues as to AVIC-USA will likely bind them. So with respect to those issues, they're entitled to be here and to state their position, because it will be binding on them. But what I don't think is appropriate is for them to be here arguing about things that don't even apply to AVIC-USA. And the public policy argument, AVIC-USA didn't even make that argument in their briefing. OK? So this is just an argument by the alter egos, which they'll have the opportunity to make when and if that award is ever confirmed against them. This award, they don't have to pay a dollar. This is not binding on them. It is only AVIC-USA. So I don't think the public policy argument is one that this court ought to take up at this point with respect to, because it is not an issue that AVIC-USA has specifically raised on appeal. But if the court decided to take it up, I think Judge Davis made the point that I would make, which is this is a question of contract, freedom of contract on arbitration. It's the most important fundamental principle is that the parties can determine how they want to arbitrate and on what basis they want to arbitrate. And the cases that they cite, all of those cases, involve situations where you have relatively unequal bargaining power. Not the situation here where, as the district court noted, very sophisticated parties, an organ of the Chinese state, highly sophisticated counsel, all of that means that the freedom of contract principles that govern arbitration ought to be the most important element of what's looked at here. So for that reason, the public policy cases, and Mr. Chow said he didn't find a case, but what he hasn't done is actually given your honors a case that deals with this situation where you have parties with equal bargaining power who select an arbitration method pursuant to their contract that's followed. And, of course, what they want to do is convert parties. They don't want members to appoint arbitrators. They want to allocate sides. But that is not what is required when sides can change, alignment can change. It could change during the course of a case. So it is perfectly rational for the parties to choose an arbitration method which gives each member the appointment of an arbitrator, regardless of how the sides may ultimately align. That's not a violation of due process, and there's no case that has said in that situation it's a violation of due process. I think my time is up. Thank you. Thank you, Mr. McClure. Mr. Salgado or Boe? Yes, your honors. To start on jurisdiction, the non-frivolous language absolutely does come from the Eleventh Circuit case. That is in a different context regarding removal. It's not language that pertains to what's going on here. A non-frivolous basis is nowhere close to what Congress has intended here, which is that this be a truly international dispute in order for the New York Convention to apply. Second, the mere allegation of alter ego does not, or an award of alter ego, does not get them across the line here. Otherwise, if it were, it would be an end run around the right to have a district court judge, not an arbitration panel, decide the question of arbitrability. The fact is alter ego and arbitrability are inextricably intertwined here. That's something that only a judge could decide. Was there jurisdiction in the district court or not? Frankly, your honor, I don't know. The answer is we don't know because we don't know what the outcome would be of the question of arbitrability. It's fundamentally that. Absolutely. The award is in part against a foreign entity. Yes. First of all, looking at the definition, that may suffice. I mean, why shouldn't that – the considerations that give these arbitration agreements jurisdiction in federal court or international awards would seem to be satisfied? Well, because the steps got taken out of order here, your honor, fundamentally. The fact is the award should – you can't simply – an arbitration – But jurisdiction is just saying who decides. Maybe there's jurisdiction and then the district judge says, no, I'm not going to confirm this award. Well, he has to decide in the first instance if they were in fact subject to arbitration. Otherwise, we're creating a massive end run here because what's happening is an arbitration panel simply assumes in the first instance something it can't actually decide and says these parties are now subject to arbitration. We can't then go to a district court and say, well, because the arbitration panel did something it has no authority to do and found they were subject to arbitration, it entered an award against them. The only reason there's an award against those non-signatories is because they were found by the arbitration panel to be subject to arbitration. It's all very circular. And it all comes back ultimately to a completely unavoidable question here, which is that a district court judge has to decide that. And like I said, this also goes to the merits as well beyond the jurisdiction question. It's all bundled up together there because on the merits, there was evidence that Mr. LeClair pointed to of there's some wind farms. Here's some wind farms we can see. We can look on the line and see photos of wind farms. That's all we know. We don't know how they were financed. We don't know when they were financed. There's a lot of missing questions there. And so that's why that adverse inference mattered so much. That $50 million investment and that adverse inference about it was critical here because otherwise the evidence wasn't there. The evidence was missing. And they got around that with the adverse inference. It was built on the finding of arbitrability. And my time has passed, Your Honor. Thank you, Mr. Salgado. Mr. Chau? Quickly, Your Honor. Mr. Counsel said the issue of Article V was not briefed. That is verifiably inaccurate. In our reply brief at pages 26 to 27, we gave the court record sites to where it was briefed, first of all. Second, there's an additional site that wasn't in our reply brief, but it's the record at 29437-29437-41. There's additional in the motion to vacate. There were citations to Article V-1B. Third, counsel responded to the public policy and due process defenses in their briefs. In fact, in one of their headings, they said, quote, no public policy or due process interest compels precisely equal influence over the selection of the panel by two sides of the dispute. There's no surprise, no surprise whatsoever. Second, he talked about parties can choose to select their message. I understand that. But there are limits and there are due process limits under Article V. The Supreme Court of the United States, Commonwealth Codings, and the Sixth Circuit in McMullen both stated that it's even more important to have equality of treatment in the arbitration process because there's no automatic right of appeal. More important in arbitration than it is in litigation. I'd like to then, in my remaining minutes, seconds, talk about his direct liability. That's not correct. I point the Court to paragraph 65 and 66 of the Arbitration Award. 65 says AVIC-USA did not violate the provision. Then if the intent of the panel was, but they did violate the, by not controlling the affiliate, they would have said that. They didn't say that. If you look at 66, there are three sentences, paragraph 66. All right, we'll look at that. Your time has expired. Thank you, Mr. Chau. Your case is under submission. Thank you very much. That's the case for today, Johnson v. Jones.